UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DIME DISTRIBUTION PARTNERS LLC
D/B/A BUILD, a Florida Limited Liability
Company, and, IAN NOBLE, individually,

      Plaintiff(s),

v.

REV UNLIMITED LLC D/B/A DUFFL, a
Foreign limited liability company, JESSE
BRODKIN, individually, and GRIFFIN
CHEN, individually,

      Defendant(s).
_____/

CASE NO.:

**COMPLAINT**

Plaintiffs, DIME DISTRIBUTION PARTNERS LLC D/B/A BUILD, ("Build") and IAN

NOBLE ("Noble"), by and through the undersigned attorney, hereby file this complaint and sue

REV UNLIMITED LLC, d/b/a DUFFL ("Duffl"), JESSE BRODKIN ("Brodkin"), and GRIFFIN

CHEN ("Chen") and states as follows:

**PARTIES, JURISDICTION, VENUE**

1.    This is an action for defamation and tortious interference with a business relationship,

where the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of

interest, costs, and attorney's fees.

2.    Build is a Florida limited liability company which conducts business in Miami-Dade

County, Florida, and whose sole member is a citizen of Florida.

3.    Noble is a citizen of Florida, the sole member of Build.

4. Duffl is a California limited liability company which conducts business in the State of Florida.

5. Brodkin is a citizen of California.

6. Chen is a citizen of California.

7. This Court has jurisdiction over this case under 28 U.S.C. § 1332 and 28 U.S.C. § 1367(a). Venue is appropriate in the Southern District of Florida pursuant to 28 U.S.C. §1391(b), as the offending communication(s) which caused Build and Noble harm were directed into Miami, Florida by Duffl, Brodkin, and Chen.

8. All conditions precedent to the filing of this action have been satisfied or are waived.

### GENERAL ALLEGATIONS

9. Beginning in July of 2025, Noble worked for Duffl in its wholesale program.

10. Duffl publicly held Noble out as its "Head of Wholesale," a title approved by Brodkin and Chen.

11. Duffl, through Brodkin and Chen, supplied Plaintiffs with Duffl's EIN, business formation documents, and other entity-related paperwork necessary to operate Duffl's wholesale program.

12. Noble formed Dime Distribution Partners LLC in July of 2025, with the full knowledge and authorization of Duffl's ownership.

13. Noble intended to open brand accounts, purchase excess inventory, and liquidate such inventory through resale channels (the "Inventory Resale Model").

14. Duffl sought to expand its wholesale operations through that model and authorized Dime Distribution Partners LLC to serve as the vehicle through which Noble executed Duffl's Inventory Resale Model.

15. Duffl directed Noble to incorporate as an LLC and to route products through Dime Distribution Partners LLC for the purpose of operating Duffl's Inventory Resale Model.

16. Duffl provided written bank authorization and remained actively involved in brand activity throughout, including by placing sample product in Duffl stores.

17. However, in February of 2026, Noble and, consequently, Dime Distribution Partners LLC were inexplicably shut out of Duffl's wholesale program.

18. At that point, Noble and Dime Distribution Partners LLC began doing business as Build, and began transitioning brand relationships and contacts solely to Build.

19. However, a multitude of Brands with whom Noble had built relationships began declining to work with Noble and/or Build.

20. Those Brands began declining to work with Noble and/or Build because they had been informed by Brodkin and Chen – Duffl's principals - that Build and Noble acted outside the bounds of an authorized agency relationship with Duffl, which was and is false.

21. In fact, numerous contacts that Noble and/or Build had worked with advised Plaintiffs that they were declining to continue working with Noble and/or Build due to statements made by Duffl, Brodkin, and/or Chen – statements which were false - such as:

    a. On March 6, 2026 a representative of Pacsafe accused Plaintiffs of providing a false credit application and banking information to Pacsafe which Pacsafe had be told by Duffl. Additionally, Pacsafe alleged that Plaintiffs improperly moved inventory that Plaintiff had stated it was buying for Duffl to its own location, implying that Plaintiff had done so without Duffl's knowledge and consent. However, this was false as Duffl had full knowledge and actively cooperated with Plaintiffs with respect to the movement of the product at issue.

    b. On March 11, 2026 a representative of the brand BiOptimizers stated that principals of Duffl had advised BiOptimizers that product ordered on Duffl's behalf by Noble had likely been rerouted and diverted to other locations, implying that this was done without Duffl's knowledge and consent. However,

3

this was false as Duffl had full knowledge and actively cooperated with Plaintiffs with respect to the movement of the product at issue.

c.  On March 19, 2026 Noble received a cease and desist letter from Momentous alleging that Noble "used Duffl's purchasing account and credentials *without authorization and under false pretenses*" to purchase inventory and send it to a warehouse unaffiliated with Duffl which was then diverted to unauthorized third-party sellers. However, this was false as Duffl had full knowledge and actively cooperated with Plaintiffs with respect to the movement of the product at issue.

22.  Additionally, numerous Brands withdrew interest in working with Build in writing after initially pursuing a working relationship including: (a) Seeking Health on February 18, 2026; (b) Osprey on February 19, 2026; (c) All-Clad on February 19, 2026; (d) T-Fal on February 19, 2026; (e) GreenPan on February 19, 2026; (f) Transparent Labs on February 23, 2026; (g) Unilever on February 23, 2026; (h) NEST New York on February 24, 2026; (i) LMNT on February 27, 2026; and (j) Double Wood Supplements on March 11, 2026.

23.  During the same time period in February 2026, several Brands verbally declined to continue working with Build or simply stopped engaging altogether: (a) Big Green Egg; (b) Chomps; (c) G-Shock; (d) Quest Nutrition; (e) Zwilling; (f) Balmuda; (g) Beauty Fashion Sales; (h) Black Rifle Coffee; (i) Buttah Haircare; (j) Chantal; (k) Crayola; (l) Cymbiotika; (m) David Protein; (n) Frette; (o) Le Creuset; (p) Lululemon; (q) Melin; (r) Nodpod; (s) Pixi Beauty; (t) Revlon; (u) IQBAR; (v) Pourri; (w) Fully Loaded Pouches; (x) Gozney; (y) Ilse Jacobsen; (z) Kraft Heinz; (aa) L'Occitane Beauty; (bb) Lola Blankets; (cc) Riedel; and (dd) TreeHouse Foods.

24.  Upon information and belief, each of the above brands declined to continue working with or pursuing negotiations with Build and/or Noble based upon false and defamatory statements made by Duffl with respect to Build's business and business model.

25.     Additionally, following the false and defamatory communications, Duffl moved to route the same brand relationships Plaintiffs had developed through Duffl's own preferred resellers.

26.     Duffl was fully aware of and permitted Build to engage in its Inventory Resale Model.

27.     By making these false and defamatory statements, Duffl has and continues to interfere with Build and Noble's business relationships.

28.     At the time Duffl made these statements, it made such statements with knowledge of their falsity or negligent disregard for the truth or falsity of such statements.

29.     As a result of Duffl having made said false statements, Build and Noble were damaged.

30.     Plaintiffs have retained the undersigned counsel in order to protect their rights and prosecute this action against Defendants.

## COUNT I – DEFAMATION AGAINST DUFFL

31.     Plaintiffs reallege and reincorporate paragraphs 1 through 30.

32.     Duffl made false and defamatory statements regarding Build and Noble.

33.     Duffl's false and defamatory statements were of and concerning Build and Noble, and falsely claimed Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

34.     Duffl made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

35.     Duffl knowingly or negligently made such false and defamatory statements.

36.     As a result Duffl making such false and defamatory statements, Build and Noble suffered damages.

37.     Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT II – DEFAMATION PER SE AGAINST DUFFL

38.     Plaintiff reallege and reincorporate paragraphs 1 through 30.

39.     Duffl made false and defamatory statements regarding Noble.

40.     Duffl's false and defamatory statements were of and concerning Noble and his company – Build - and falsely claimed Noble and/or his company were involved in fraudulent activity with respect to acquiring goods for resale.

41.     More specifically, Duffl falsely claimed that Noble was personally diverting products ordered on behalf of Duffl, without Duffl's knowledge, and selling them to unauthorized third-party sellers such as Amazon.

42.     Duffl made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

43.     Such statements subjected Noble to hatred, distrust, ridicule, contempt, or disgrace.

44. Such statements injured Noble in the trade and/or his profession.

45. As a result of such false and defamatory statements made by Duffl, Noble suffered damages.

46. Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiff Ian Noble asks this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT III – DEFAMATION AGAINST BRODKIN

47. Plaintiffs reallege and reincorporate paragraphs 1 through 30.

48. Brodkin made false and defamatory statements regarding Build and Noble.

49. Brodkin made such statements in his individual capacity and/or his capacity as Duffl's principal.

50. Brodkin's false and defamatory statements were of and concerning Build and Noble, and he falsely claimed Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

51. Brodkin made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

52. Brodkin knowingly or negligently made such false and defamatory statements.

53.     As a result Brodkin making such false and defamatory statements, Build and Noble suffered damages.

54.     Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

### COUNT IV – DEFAMATION PER SE AGAINST BRODKIN

55.     Plaintiff reallege and reincorporate paragraphs 1 through 30.

56.     Brodkin made false and defamatory statements regarding Noble.

57.     Brodkin's false and defamatory statements were of and concerning Noble and his company – Build - and falsely claimed Noble and/or his company were involved in fraudulent activity with respect to acquiring goods for resale.

58.     More specifically, Brodkin falsely claimed that Noble was personally diverting products ordered on behalf of Duffl, without Duffl's knowledge, and selling them to unauthorized third-party sellers such as Amazon.

59.     Brodkin made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

60.     Such statements subjected Noble to hatred, distrust, ridicule, contempt, or disgrace.

8

61.     Such statements injured Noble in the trade and/or his profession.

62.     As a result of such false and defamatory statements made by Duffl, Noble suffered damages.

63.     Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiff Ian Noble asks this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

### COUNT V – DEFAMATION AGAINST CHEN

64.     Plaintiffs reallege and reincorporate paragraphs 1 through 30.

65.     Chen made false and defamatory statements regarding Build and Noble.

66.     Chen made such statements in his individual capacity and/or his capacity as Duffl's principal.

67.     Chen's false and defamatory statements were of and concerning Build and Noble, and he falsely claimed Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

68.     Chen made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

69.     Chen knowingly or negligently made such false and defamatory statements.

70.     As a result Chen making such false and defamatory statements, Build and Noble suffered damages.

71.     Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

### COUNT VI – DEFAMATION PER SE AGAINST CHEN

72.     Plaintiff reallege and reincorporate paragraphs 1 through 30.

73.     Chen made false and defamatory statements regarding Noble.

74.     Chen's false and defamatory statements were of and concerning Noble and his company – Build - and falsely claimed Noble and/or his company were involved in fraudulent activity with respect to acquiring goods for resale.

75.     More specifically, Chen falsely claimed that Noble was personally diverting products ordered on behalf of Duffl, without Duffl's knowledge, and selling them to unauthorized third-party sellers such as Amazon.

76.     Chen made such statements – either written or orally – to third parties including, but not limited to: Pacsafe, BiOptimizers, Momentous, IQBAR, Pourri, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT, Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

77.     Such statements subjected Noble to hatred, distrust, ridicule, contempt, or disgrace.

78.     Such statements injured Noble in the trade and/or his profession.

79.     As a result of such false and defamatory statements made by Duffl, Noble suffered damages.

80.     Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiff Ian Noble ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT VII – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIPS AGAINST DUFFL

81.     Plaintiffs reallege and reincorporate paragraphs 1 through 30.

82.     Build and/or Noble had advantageous business relationships with prospective clients.

83.     Specifically, Build and/or Noble were in business relationships or active negotiations with numerous Brands, including but not limited to, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

84.     Duffl knew of the existence of these relationships.

85.     Duffl has intentionally and without justification interfered with Build and/or Noble's business relationships.

86.     Duffl used improper methods to interfere with Plaintiffs' business relationships or did so out of malice.

87.    Duffl interfered by falsely claiming Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

88.    By making these false statements, Duffl has and continues to interfere with Build and/or Noble's business relationships.

89.    Had Duffl not interfered, the understandings and/or agreements Build and/or Noble had with the above Brands would in all probability been completed.

90.    As a direct and proximate result of Duffl's intentional and unjustified interference with Build and/or Noble's advantageous business relationships, Build and/or Noble has and will continue to suffer damages.

91.    Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT VIII – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIPS AGAINST BRODKIN

92.    Plaintiffs reallege and reincorporate paragraphs 1 through 30.

93.    Build and/or Noble had advantageous business relationships with prospective clients.

94.    Specifically, Build and/or Noble were in business relationships or active negotiations with numerous Brands, including but not limited to, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le

Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

95. Brodkin knew of the existence of these relationships and actively participated in interfering with those relationships.

96. Brodkin has intentionally and without justification interfered with Build and/or Noble's business relationships.

97. Brodkin used improper methods to interfere with Plaintiffs' business relationships or did so out of malice.

98. Brodkin interfered by falsely claiming Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

99. By making these false statements, Brodkin has and continues to interfere with Build and/or Noble's business relationships.

100. Had Brodkin not interfered, the understandings and/or agreements Build and/or Noble had with the above Brands would in all probability been completed.

101. As a direct and proximate result of Brodkin's intentional and unjustified interference with Build and/or Noble's advantageous business relationships, Build and/or Noble has and will continue to suffer damages.

102. Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT IX – TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIPS AGAINST CHEN

103.   Plaintiffs reallege and reincorporate paragraphs 1 through 30.

104.   Build and/or Noble had advantageous business relationships with prospective clients.

105.   Specifically, Build and/or Noble were in business relationships or active negotiations with numerous Brands, including but not limited to, Seeking Health, Osprey, All-Clad, T-Fal, GreenPan, Transparent Labs, Unilever, NEST New York, LMNT,  Double Wood Supplements, Big Green Egg, Chomps, G-Shock, Quest Nutrition, Zwilling, Balmuda, Beauty Fashion Sales, Black Rifle Coffee, Buttah Haircare, Chantal, Crayola, Cymbiotika, David Protein, Frette, Le Creuset, Lululemon, Melin, Nodpod, Pixi Beauty, Fully Loaded Pouches, Gozney, Ilse Jacobsen, Kraft Heinz, L'Occitane Beauty, Lola Blankets, Riedel, TreeHouse Foods, and Revlon.

106.   Chen knew of the existence of these relationships.

107.   Chen has intentionally and without justification interfered with Build and/or Noble's business relationships and actively participated in interfering with those relationships.

108.   Chen used improper methods to interfere with Plaintiffs' business relationships or did so out of malice.

109.   Chen interfered by falsely claiming Build and/or Noble were involved in fraudulent activity with respect to acquiring goods for resale.

110.   By making these false statements, Chen has and continues to interfere with Build and/or Noble's business relationships.

111.   Had Chen not interfered, the understandings and/or agreements Build and/or Noble had with the above Brands would in all probability been completed.

112.    As a direct and proximate result of Chen's intentional and unjustified interference with Build and/or Noble's advantageous business relationships, Build and/or Noble has and will continue to suffer damages.

113.    Defendant's conduct was intentional or grossly negligent, and in disregard of Plaintiff's rights, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, pursuant to the foregoing, Plaintiffs ask this Court to award compensatory damages, punitive damages, nominal damages and interest to the extent established at trial, attorneys' fees, costs, and any other relief the Court deems just and proper.

**Demand for Jury Trial**

Plaintiff hereby demands trial by jury.

Dated June 5, 2026.

> **Beighley, Myrick, & Udell, P.A.**
> *Attorneys for Plaintiffs*
> 2601 S. Bayshore Drive, Suite 770
> Miami, FL 33130
> (305) 349-3930 – Phone
> notice66@bmulaw.com
>
> By:     /s/ *Maury L. Udell*
>         Maury L. Udell, Esquire
>         mudell@bmulaw.com
>         Fla. Bar 121673
>
>         *Megan E. Pearl*
>         Megan E. Pearl, Esquire
>         mpearl@bmulaw.com
>         Fla. Bar No. 113881